UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

STEPHANIE ANN TALLEY                                     CIVIL ACTION

VERSUS                                                   NO:     14-2310

CAROLYN W. COLVIN                                        SECTION: "S"
ACTING COMMISSIONER OF
SOCIAL SECURITY ADMINISTRATION

## REPORT AND RECOMMENDATION

This is an action for judicial review of a final decision of the Commissioner of the Social Security Administration ("the Commissioner") pursuant to Title 42 United States Code § 405(g). The Commissioner denied Plaintiff, Stephanie Ann Talley ("Talley"), eligibility for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 423.[1]

The matter was referred to the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(b), for the submission of proposed findings and recommendations.

**I.     Background**

Talley is a thirty-four-year-old,[2] 5'7", 230-pound female with two years of college education[3] and past relevant work as a service cashier.[4] She also has experience working as a caregiver and bookkeeper.[5]

Talley filed for a period of disability and disability insurance benefits under Title II of the

---

[1]*See* Rec. Doc. No. 1, p.1.

[2]*See* Rec. Doc. No. 11, p. 84, Tr. 31.

[3]*Id.* at Tr. 31.

[4]*See* Rec. Doc. No. 11-6, p. 63, Tr. 209.

[5]*Id.*

Social Security Act ("SSA") on December 30, 2011.[6] Her claims were initially denied on February 8, 2012.[7] She alleges that she became disabled on March 15, 2011 due to fibromyalgia, nausea, vomiting muscle spasm, and nerve pain.[8] Her date of last insured is September 30, 2015.[9]

Talley filed a written request for a hearing on February 14, 2012.[10] Philip McLeod, the Administrative Law Judge ("ALJ"), held a hearing on October 24, 2012.[11] The ALJ denied Talley's claims on July 25, 2013, finding that she was not disabled under the meaning of the SSA.[12]

In his decision, the ALJ analyzed Talley's claims pursuant to the five-step[13] evaluation process used to determine whether a claimant is "disabled." Using this process, the ALJ found that Talley met the insured status requirements of the SSA through September 30, 2015, that she

---

[6]*See* Rec. No. 11-2, p. 21, Tr. 20.

[7]*Id.* at 11.

[8]*See* Rec. Doc. No. 11-3, p. 3, Tr. 86.

[9]*Id.* at Tr. 176.

[10]*See* Rec. Doc. 11-2, p. 21, Tr. 20.

[11]*Id.*

[12]*Id. at 28.*

[13]To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. *Carey v. Apfel*, 230 F.3d 131, 134-35 (5th Cir. 2000); citing *Crowley v. Apfel*, 197 F.3d 194 (5th Cir. 1999). First, the claimant must not be presently working at any substantial gainful activity. Id. Second, the claimant must have an impairment or combination of impairments that are severe. Id. An impairment or combination of impairments is "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." *Id.* (citing *Crowley*, 197 F.3d 194, 197-98). Third, the claimant's impairment must meet or equal an impairment listed in the appendix to the regulations. Id. Fourth, the impairment must prevent the claimant from returning to his past relevant work. Fifth, the impairment must prevent the claimant from doing any relevant work that exists in the national economy, considering the claimant's residual functional capacity, age, education, and past work experience. *Id. See Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990).

had not engage in substantial, gainful activity since March 15, 2011, her alleged onset date.[14] The ALJ further found that she suffered from obesity, fibromyalgia, and headaches.[15]

The ALJ found that Tally has a residual functional capacity to perform a limited range of light work, as defined in 20 CRF 404.1567(b), where she is able to lift and carry objects weighing twenty pounds occasionally and ten pounds frequently. (Tr. 13)   He concluded that she is able to sit for a maximum of four hours and stand and walk for a maximum of four hours during a normal eight-hour workday. (Tr. 13)

He further found that she is able only occasionally to reach, handle, finger, feel, push and pull with her left hand because of left-sided pain caused by fibromyalgia. (Tr. 13) He found that she could never climb ladders or scaffolds but she is able occasionally to climb stairs and ramps, balance, stoop, kneel, crouch, and crawl. (Tr. 13) He found that the medication Talley took affected her attention and concentration when completing work tasks to the extent that she would be unable to perform at an optimal level for up to one-fourth (i.e. two hours of an eight-hour workday). (Id.) However, he found that at no time during the workday would she be precluded altogether from accomplishing work tasks. (Id.)

The ALJ concluded that Talley is unable to perform any past, relevant work. (Tr. 22) Talley, a younger individual, according to the Medical-Vocational Rules, was not disabled whether or not she had transferable job skills. (Finding 9, Tr. 22)   The ALJ found that considering Talley's age, education, work experience, and residual functional capacity there were a significant number of jobs in the national economy that she can perform. (Finding 10, Tr.22)   As a result, the ALJ found that the claimant was not disabled, as defined in the SSA,

---

[14]*See* Rec. Doc. No. 11-2 p. 26, Tr. *22.*

[15]*Id.*

from March 15, 2011, through the date of his decision. (Finding 11, Tr. 23)

## II. Standard of Review

The role of this Court on judicial review under Title 42 U.S.C. § 405(g) is limited to determining whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner applied the proper legal standards when evaluating the evidence. *See Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). The Court may not re-weigh the evidence, try issues *de novo*, or substitute its judgment for that of the Commissioner. *Allen v. Schweiker*, 642 F.2d 799, 800 (5th Cir. 1981). If supported by substantial evidence, the Commissioner's findings are conclusive and must be affirmed. *Houston v. Sullivan*, 895 F.2d 1012, 1016 (5th Cir. 1989). However, an ALJ's failure to apply the correct legal test constitutes a ground for reversal. *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

Substantial evidence is more than a scintilla and less than a preponderance, and is considered relevant such that a reasonable mind might accept it as adequate to support a conclusion. *Ripley v. Chater,* 67 F.3d, 552, 555 (5th Cir. 1995); citing *Richardson v Perales*, 402 U.S. 389, 401 (1971). It must do more than create a suspicion of the existence of the fact to be established, but no "substantial evidence" will be found where there is only a "conspicuous absence of credible choices" or "contrary medical evidence." *See Payne v. Weinberger*, 480 F.2d 1006, 1007 (5th Cir. 1973); *Hemphill v. Weinberger*, 483 F.2d 1137, 1138 (5th Cir. 1973). However, a single piece of evidence will not satisfy the substantiality test if the ALJ ignores, or fails to resolve, a conflict created by countervailing evidence. Evidence is not substantial if it is overwhelmed by other evidence, particularly evidence offered by treating physicians. *Franklin v. Soc. Sec. Admin.*, No. 12-2681, 2013 WL 5739078, at *2 (E.D. La. Oct. 22, 2013); citing *Kent v. Schweiker,* 710 F.2d 110, 114 (3rd Cir. 1983).

The ALJ must give controlling weight to the opinion of a treating physician if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence." *Martinez*, 64 F.3d at 176; (citing 20 C.F.R. § 404.1527(d)(2)). However, " '[t]he Commissioner is free to reject the opinion of any physician when the evidence supports a contrary conclusion.'" *Martinez*, 64 F.3d at 175 (quoting *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987)). The relevant criteria to consider provides that the ALJ consider (1) the physician's length of treatment of the claimant; (2) the physician's frequency of examination; (3) the nature and extent of the treatment relationship; (4) the support of the physician's opinion afforded by the medical evidence of record; (5) the consistency of the opinion with the record as a whole; and (6) the specialization of the treating physician. *See* 20 C.F. R § 404.1527. "Good cause for abandoning the treating physician rule includes 'disregarding statements [by the treating physician] that are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by evidence'." *Legett,* 67 F.3d at 566 (citing *Greenspan,* 38 F.3d at 237).

Where there is reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, the ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of the treating physician's views under 20 CFR 404.1527 (2); *See Newton v. Apel*, 209 F.3rd 448 (5th Cir. 2000). Further, regardless of the opinions and diagnoses of medical sources, "the ALJ has sole responsibility for determining a claimant's disability status." *Martinez*, 64 F.3d at 176.

Finally, the Court "weigh[s] four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnosis and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability;

and (4) his age, education, and work history." *Hendricks v. Apfel*, No. 99-1212, 2000 WL 174884, at *3 (E.D. La. Feb. 14, 2000) (*citing Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995)).

The concept of disability is defined in the Social Security Act as the "inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted . . . for a constructive period of not less than twelve months." 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A). Section 423(d)(3) of the Act further defines "physical or mental impairment" as "an impairment that results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *See* 42 U.S.C. § 423(d)(3).

Remand for further consideration of disability benefits on grounds of new evidence requires that the evidence be: (1) "new," (2) "material," and (3) that good cause be shown for the failure to incorporate such evidence into the record in a prior proceeding.[16]

**III.   Analysis**

   **A.   Whether the ALJ failed to apply Social Security Ruling 12-2p when evaluating Talley's Fibromyalgia.**

Talley alleges that the ALJ failed to apply Social Security Ruling 12-2p ("SSR 12-2p") when evaluating her fibromyalgia. Talley alleges that the ALJ cannot ignore her complaints of pain and that the ALJ failed to properly consider the degree to which the record established that her pain was more severe than the objective evidence indicated which violates §404.1529 (C) and SSR12-2p.  Talley also contends that the ALJ failed to recognize that the lack of

---

[16]*See Dorsey v. Heckler*, 702 F.2d 597, 604 (5th Cir. 1983).

objective findings is a characteristic of fibromyalgia and failed to acknowledge properly the relevance of evidence supporting Talley's allegations. Therefore, Talley contends that the ALJ's RFC finding is contrary to law and unsupported by substantial evidence.

The Commissioner contends that the ALJ followed SSR 12-2p when evaluating Talley's fibromyalgia. The Commissioner further contends that plaintiff's reliance on SSR 12-2p as cited was regarding assessing whether the condition is a medically determinable impairment. The Commissioner contends that the ALJ in fact made such a conclusion when he decided that it was a severe impairment and that the ALJ considered the longitudinal record regarding her fibromyalgia.

The ALJ noted that in July 2012, Roxanne Minette, M.D. diagnosed Talley with fibromyalgia and flank pain. (Tr. 19) The ALJ noted that from December 2012 through April 2013, Talley was treated for fibromyalgia and diffuse myalgia[17] and arthralgia[18] for a duration of two years. (Tr. 20) He noted that at that time, Talley had complaints of joint tenderness affecting the trapezius muscles and bilateral knee pain. (Tr. 20) The ALJ found that Talley's allegations of significant pain were not entirely credible.

He noted that Miljana Mandich, M.D. concluded that Talley experienced tenderness at various trigger points on her left side during her examination but that she did not find that Talley experienced a more significant degree of pain. (Id.) The ALJ noted that a vast disparity exists

---

[17] *Myalgia*, MAYO CLINIC
http://www.mayoclinic.org/sympstoms/muscle-pain/basics/definitionsum-20050866 (last visited Jan. 18, 2016) (defining myalgia as pain in a muscle or group of muscles).

[18] *Arthralgia*, NEWS MEDICAL LIFE SCIENCES & MEDICINE
http://www.news-medical.net/health/What-is-Arthralgia.aspx (last visited Jan. 18, 2016) (defining arthralgia as pain in joint).

7

between the objectively demonstrable medical evidence and the alleged intensity and persistence of her symptoms caused by fibromyalgia, obesity, and headaches. (Tr.21).  The ALJ further noted that a long-term disability specialist with MetLife submitted a report indicating that Talley was disabled due to chronic pain caused by fibromyalgia to which the ALJ did not give weight because the disability specialist is not an acceptable medical source. (Tr. 22).

Fibromyalgia ("FM") is characterized by widespread pain in the joints, muscles, tendons, or nearby soft tissues that persists for at least three months. To find a medically determinable impairment ("MDI") of FM, the ruling requires that there be sufficient, objective evidence to support a finding that the person's impairment(s) so limit the person's functional abilities that it precludes him or her from performing any substantial gainful activity. Such evidence can be provided, generally, from an acceptable medical source, i.e., a licensed physician (a medical or osteopathic doctor).  A physician's diagnosis alone, however, is not sufficient. The evidence must show that the physician reviewed the person's medical history and conducted a physical exam. The treatment notes must be consistent with a diagnosis of FM, and must track the 1990 American College of Rheumatology (ACR) Criteria for the Classification of Fibromyalgia, or the 2010 ACR Preliminary Diagnostic Criteria.

The evidence in the record shows that the ALJ conducted an extensive review of Talley's medical history.  He painstakingly detailed her medical care with Dr. Keeting, who saw her for a follow-up of her FM and noted that she tested positive for muscle pain and that she was diagnosed by Dr. Minette with Fibromyalgia. (Tr. 19, 316) The Court notes that the symptoms of FM are entirely subjective and there are no laboratory tests to identify its presence or severity. *Gilbert v. Astrue,* 231 Fed. Appx. 778, 783–784 (10th Cir. 2007)(the lack of objective test

findings noted by the ALJ is not determinative of the severity of FM).   The rule of thumb is that the patient must be positive on at least 11 of the 18 tender points to be diagnosed with FM *Gilbert,* 231 Fed.Appx. at 783; *Brown,* 182 Fed.Appx. at 773 n. 1; *Glenn v. Apfel,* 102 F.Supp.2d 1252, 1259 (D.Kan. 2000).   The ALJ found that Talley has FM along with other severe impairments but based upon the functional capacity opinion given by Dr. Mandich, Talley was able to work full-time on a regular and continuing basis. (Tr. 22)

SSR-12-2p does not mandate a finding of disability because of the lack of evidence, it simply provides that the lack of objective evidence cannot be used to conclude that FM does not exist.   In this case, the ALJ did not use the lack of objective evidence to make such a finding; to the contrary, he concluded that Talley has FM but that while it is severe it is not disabling. Plaintiff appears to conflate the issues in attempt to suggest that because she has FM, that her complaints of disabling pain must be deemed credible resulting in a disability finding.

It is important to note that during Dr. Mandich's examination of Talley, she concluded that Talley had slightly limited range of motion of the lower back and has about ten tender points all on the left side of her body from the left shoulder blade to the side, with full range motion of all joints including knees and shoulders.   She noted that her neurological exam was grossly intact but that she had somewhat poor grip strength and grasping/effort associated with tremulousness of hands.   She thereafter issued a conclusion detailing various limitations regarding Talley's ability to sit, stand, and lift which were evaluated by the ALJ and considered in his conclusion as to whether the presence of FM rendered her disabled.   The Court having reviewed the evidence finds that the ALJ properly evaluated Talley's FM and that his decision is based upon substantial evidence.

### B. Whether substantial evidence supports the ALJ's finding that Talley's nausea does not cause a significant limitation?

Talley contends that the ALJ erred when he concluded that the nausea she experiences does not constitute a severe impairment. Talley contends that her nausea and vomiting are documented throughout the record and that medical examinations regularly reveal epigastric, abdominal tenderness or flank pain. Talley contends that it was her nausea and vomiting that resulted in her unsuccessful attempt to return to work and seeking long-term disability. She contends that the ALJ failed to acknowledge the extensive workups she had by various gastroenterologists and urologists and that the urologist suspected that she had interstitial cystitis. Talley contends that while there has been some improvement, she continues to vomit three to four times a month. (Rec. Doc.12)

The Commissioner contends that the ALJ did not err in concluding that Talley's nausea was not a severe impairment. The Commissioner contends that once it is determined that a claimant has a severe impairment for the purposes of step two, the combined effect of all impairments are considered, regardless of the label as "severe" or "non-severe."

In the opinion, the ALJ noted that Talley described episodes of nausea and that she experiences nausea and vomiting three to four times a month. (Tr. 14)  However, the ALJ noted that the weight of the evidence did not support her testimony regarding its frequency. The Court notes that the wealth of medical information in the record indicates that she complained of nausea periodically once a month beginning in March 29, 2011, November 29, 2011, December 1, 2011, December 29, 2011, and December 19, 2012.  However, as of May 30, 2013, Talley testified that her nausea increased to three to four times a month which is not reflected in the

medical records in evidence. (Tr. 58). The Court therefore finds that the ALJ's evaluation of Talley's nausea and his decision not to include nausea as a limitation in the RFC is supported by substantial evidence.

### C. **Whether the ALJ properly evaluated Talley's obesity**

Talley contends that the ALJ concluded that obesity is a severe impairment but erred because he did not include it in the RFC limitations. Talley contends that the ALJ should have considered how the obesity affects or exacerbates her discomfort. She contends that his failure to do so constitutes reversible error.

The Commissioner contends that the ALJ considered all of Talley's symptoms and the extent they were consistent with the medical evidence. The Commissioner contends that the ALJ noted the existence of Talley's obesity but concluded that it did not exacerbate her discomfort to a significant or troubling degree which is consistent with obesity being a severe impairment. The Commissioner noted that a severe impairment is one in which a slight abnormality have minimal effect on a person that would not be expected to interfere with a person's ability to work.

The record shows that the ALJ noted and included an assessment of the fact that Talley is obese in his RFC assessment. (Tr. 20) He noted that during a visit in July 2012, Talley's extremities were obese but otherwise normal with full range of motion of all joints including knees and shoulders. (Id.) He further noted that after consideration of all of the evidence, Talley's medically determinable impairments could reasonably be expected to cause a degree of symptomatology but that the intensity, persistence and limiting effects of the symptoms were not credible. (Tr. 21) Thus, in examining the records as a whole, the ALJ properly determined that

Tally's obesity did not affect her work capacity beyond what he indicated in his RFC assessment.

### D. Whether the ALJ erred when he rejected the opinion of Dr. Minette, as an insurance employee when she is a treating source?

Talley contends that the ALJ's reference to Dr. Minette as an insurance employee rather than a treating source caused him to reject the doctor's opinion and determine whether it should have been given controlling weight. Talley notes that Dr. Minette completed by hand an opinion and returned it to the insurance company on the form provided. Talley suggests that the ALJ's failure to consider the opinion and weigh it against Dr. Mandich's opinion constitutes reversible error.

The Commissioner concedes that the ALJ erred in properly identifying Dr. Minette's opinion but suggests that the error was harmless because he was not required to give controlling weight to the opinion. The Commissioner notes that the first opinion regarding Talley's inability to work is a finding reserved to the ALJ and therefore would not have been controlling. The Commissioner contends that Dr. Minette's opinion is not well supported by medically acceptable clinical, laboratory, or diagnostic techniques.

The record shows that Dr. Minette is a treating physician who seemingly treated Tally from March to July 2012 according to the medical records. The ALJ's even noted that Dr. Minette concluded that Talley had FM, a severe impairment. Fibromyalgia is diagnosed entirely based on patient's reports of pain and other symptoms as there are no laboratory tests to confirm the diagnosis or its severity. *Benecke v. Barnhart,* 379 F.3d 587, 594 (9th Cir. 2004). In *Green–Younger,* 335 F.3d 99 (2nd Cir. 2003), a claimant diagnosed with FM as denied disability benefits. The United States Court of Appeals for the Second Circuit reversed and remanded for calculation of benefits because the ALJ improperly rejected the opinion of the claimant's treating

physician on the basis that there was a lack of objective medical findings. The court recognized that FM can be a disabling impairment but that it "eludes measurement" through objective medical evidence because there are "no objective tests which can conclusively confirm the disease." *Id.* at 108. Consequently, the court held that an ALJ cannot reject a treating physician's FM diagnosis or refuse to give the physician's opinion controlling weight based upon a lack of objective evidence, nor require "objective" evidence "beyond the clinical findings necessary for a diagnosis of fibromyalgia under established medical guidelines." *Id.* at 106. Whether the ALJ in this case would have given controlling weight to the medical opinion of Dr. Minette is unknown in light of the fact that he rejected it under the mistaken belief that it was the opinion of an insurance employee.

The Court finds that the ALJ erred when he failed to consider the treating records and opinion of Dr. Minette without evaluating them under Section 404.1527(C). When the ALJ does not correctly apply the law, reversal and remand is generally appropriate. *See Schaal v. Apfel*, 134 F.3d at 505. Therefore, the ALJ's decision is reversed and remand for consideration of all of the evidence of record.

## IV. Recommendation

**IT IS RECOMMENDED** that the decision of the Administrative Law Judge denying Stephanie Ann Talley's Disability Insurance Benefits be **REVERSED AND REMANDED** for the reasons assigned above.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from

attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[19]

New Orleans, Louisiana, this 20th day of January 2016

_____
**KAREN WELLS ROBY
UNITED STATES MAGISTRATE JUDGE**

---

[19] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.